**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**FILED**

OCT 14 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br> By:  United States Attorney )<br>  for the District of Columbia )<br>  555 Fourth Street, N.W., Civil Division )<br>  Washington, D.C. 20530 )<br> ) | |

Petitioner,

Case: 1:11-mc-00565
Assigned To : Boasberg, James E.
Assign. Date : 10/14/2011
Description: Miscellaneous

v.

LANCE ARMSTRONG
Serve: John W. Keker, Esq. )
  Keker & Van Nest LLP )
  710 Sansome Street )
  San Francisco, CA 94111-1704 )
  )
Respondent. )
_____)

**UNITED STATES' PETITION FOR SUMMARY
ENFORCEMENT OF INSPECTOR GENERAL SUBPOENA**

Petitioner, the United States of America (United States), through its counsel and pursuant

to the Inspector General Act of 1978, 5 U.S.C. App. 3 § 6(a)(4), respectfully petitions this Court

for an order compelling the respondent, Lance E. Armstrong, to comply with the Inspector

General's subpoena *duces tecum* No. 110576 (OIG subpoena).  Adopted by reference and

incorporated herein are the accompanying Memorandum in Support of the United States' Petition

for Summary Enforcement of Inspector General Subpoena and a Declaration from Michael J.

Pugliese, Special Agent, Office of Inspector General (OIG), United States Postal Service (USPS).

A proposed Order also is attached.

The United States contends as follows in support of its Petition:

<u>Jurisdiction and Venue</u>

1.      Subject matter jurisdiction is conferred by § 6(a)(4) of the Inspector General Act of 1978, 5 U.S.C. App. 3 (authorizing Inspectors General to subpoena documents and other information, and to enforce their subpoenas in United States District Courts) and 28 U.S.C. §§ 1331 (providing for "district courts . . . [to] have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States") and 1345 (providing for "district courts . . . [to] have original jurisdiction of all civil actions, suits or proceedings commenced by the United States").

2.      Venue is alleged under 28 U.S.C. § 1391(b)-(c)(1)-(2) (providing for venue based on where "a substantial part of the events or omissions giving rise to the claim occurred").

<u>Parties</u>

3.      Petitioner is the United States.

4.      Respondent is Lance E. Armstrong, who resides in Austin, Texas.

<u>Issuance and Service of Subpoena</u>

5.      The subpoena was issued in Washington, D.C. on June 10, 2011, by the USPS-OIG pursuant to the Inspector General Act of 1978 (the Act), 5 U.S.C. App. 3 § 6(a)(4), which authorizes the subpoenaing of records as part of the OIG's responsibility to investigate and identify fraud and abuse in the USPS's programs and operations.  See 5 U.S.C. App. 3 § 4 (a)(1), (3)-(5).

6.     As described in more detail in the subpoena and the accompanying Declaration, the subpoena was served on Mr. Armstrong in furtherance of the OIG's investigation to determine whether the corporate entities that owned and managed the cycling team sponsored by the USPS or certain individuals, including Mr. Armstrong, defrauded or made false statements in connection with the sponsorship contract with the USPS. The contract prohibited the team and its riders from employing substances or methods that were banned by cycling's governing bodies, and further required the team to take "immediate action" in the event that a rider used such substances or methods in violation of the agreement. The USPS paid approximately $40 million pursuant to the contract between 1996 and 2004.

<u>Mr. Armstrong's Failure to Comply with the Subpoena</u>

7.     The subpoena was served in San Francisco, California on June 10, 2011. The Date of Return was June 29, 2011, which was extended by the Government to July 8, 2011. The time to respond has now passed, and Mr. Armstrong has declined to produce documents in compliance with the subpoena or state a proper objection thereto. Accordingly, summary enforcement of the subpoena is appropriate.

WHEREFORE, petitioner United States respectfully requests that this Court enter an Order granting this Petition and:

1.     Requiring Lance Armstrong to produce to the OIG within five calendar days of the Court's Order all items described in the subpoena.

2.     Granting such other and further relief to the United States that this Court deems necessary and appropriate.

3

Respectfully submitted,

TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney

RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


DARRELL C. VALDEZ, D.C. Bar # 420232
MERCEDEH MOMENI
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
Tel:  (202) 307-2843
Fax:  (202) 514-8780


JOYCE R. BRANDA, D.C. Bar No. 246363
MICHAEL D. GRANSTON
ROBERT E. CHANDLER, D.C. Bar No. 477640
Attorneys, Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 514-4678
Fax:  (202) 514-0280

Attorneys For United States

4

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Petition for Summary Enforcement of

Inspector General Subpoena, the Memorandum in support thereof, and Declaration were served

by first-class mail this 14th day of October, 2011 to counsel for Lance Armstrong:

John W. Keker, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111-1704


DARRELL C. VALDEZ
Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Misc. No. |
| | ) | |
| LANCE E. ARMSTRONG, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF UNITED STATES' PETITION FOR**
**SUMMARY ENFORCEMENT OF INSPECTOR GENERAL SUBPOENA**

The United States of America (United States), for the Office of Inspector General (OIG)
of the United States Postal Service (USPS), respectfully submits this memorandum of points and
authorities in support of the United States' Petition for Summary Enforcement. The
administrative subpoena *duces tecum* No. 110576, issued pursuant to the Inspector General Act
of 1978 (Inspector General Act), 5 U.S.C. app. 3, was served upon Lance E. Armstrong on
June 10, 2011. The subpoena required Mr. Armstrong to produce certain documents, including
documents reflecting Mr. Armstrong's interest in Tailwind Sports LLC, payments by
Mr. Armstrong to certain persons, and documents reflecting Mr. Armstrong's use of substances
or methods that are banned from use by professional cyclists. Mr. Armstrong has failed to
comply with the subpoena and has refused to interpose any valid objection to the subpoena.

An administrative subpoena is summarily enforceable if the government establishes by
declaration that the subpoena is within the agency's authority, seeks information reasonably
relevant to the agency's inquiry, and is not indefinite or unduly burdensome. As shown in the
accompanying Declaration of Special Agent Michael Pugliese (Pugliese Decl.), the subpoena

issued to Mr. Armstrong satisfies each of these requirements.  Accordingly, the United States

respectfully requests that this Court enter an order requiring Mr. Armstrong to produce all

documents and materials described in the subpoena within five days of the issuance of the

Court's order.[1]

## STATEMENT OF FACTS

From 1996 through 2004, the USPS sponsored a professional cycling team owned by

Tailwind Sports LLC (Tailwind), and during that time the USPS paid Tailwind between

$1 million and $9 million per year to sponsor the team.  Pugliese Decl. ¶ 3.  Mr. Armstrong was

the lead rider for the team from 1999 through 2004.  *Id.*  The sponsorship agreement between the

USPS and Tailwind prohibited the team and its riders from employing substances or methods

that were banned by cycling's governing bodies, and further required the team to take

"immediate action" in the event that a rider used such substances or methods in violation of the

agreement.  *Id.*  The USPS-OIG is investigating whether certain persons, including

Mr. Armstrong, defrauded or submitted false claims to the USPS by making false statements

about the team's or their own compliance with the sponsorship agreement's prohibition on the

use of banned substances and methods.  *Id.*  The United States Attorney's Office for the Central

District of California is conducting a separate criminal investigation which is ongoing.  *Id.*

In furtherance of the USPS investigation, the USPS-OIG issued a subpoena to

Mr. Armstrong on June 10, 2011, and Mr. Armstrong was served through counsel on the same

---

[1] In light of Mr. Armstrong's expressed sensitivity to public disclosure relating to the Government's investigations, we have filed simultaneously herewith a motion to seal this petition and related documents temporarily, until Mr. Armstrong has had an opportunity to be heard on the issue of whether public disclosure is appropriate.

day.  Pugliese Decl. ¶ 5, Exh. A.  The subpoena contains 21 requests for documents, including

documents relating to Mr. Armstrong's interest in or control of the corporate entities that owned

and managed the USPS team (requests 1-2, 6); his understanding and compliance with the

sponsorship agreement with the USPS (requests 3-5); funds paid to Mr. Armstrong directly or

indirectly by the USPS (requests 1, 6, 10-13); and the use of any banned performance enhancing

drugs or procedures by Mr. Armstrong or other members of the cycling team (requests 7-9, 13-

21).  *Id.* at ¶¶ 4, 5.

     The response date for the subpoena was June 29, 2011, which the government agreed to

extend to July 8, 2011.  *Id.* at ¶ 5.  In a letter dated June 16, 2011, Mr. Armstrong's counsel, John

W. Keker, indicated that Mr. Armstrong "is entitled to invoke the Fifth Amendment in response

to [the Government's] subpoena," and inquired about whether the United States would provide

"act of production immunity" in the event that Mr. Armstrong invoked his Fifth Amendment

right.  Pugliese Decl. ¶ 6.  In its response, the government informed Mr. Keker that any

discussions about any type of immunity should be addressed to the prosecutors leading the

criminal investigation in the Central District of California.  Pugliese Decl. ¶ 7.

     On July 7, 2011, Mr. Keker informed the government that Mr. Armstrong did not intend

to respond to the subpoena.  Pugliese Decl. ¶ 8.  He also suggested that, not only would

Mr. Armstrong refuse to produce responsive documents, he also would not  invoke any "of his

constitutional rights" or otherwise state any objection to the subpoena.  *Id.*  Mr. Keker offered no

basis for Mr. Armstrong's failure to respond, but his letter did offer the vague suggestion that

there was some connection between Mr. Armstrong's recalcitrance and Mr. Keker's allegation

that the investigation in the Central District of California "has been plagued by rampant leaking."

*Id.* In a conference call with the government on July 19, 2011, Mr. Keker stated his client's

intention not to respond to the subpoena, but refused to elaborate on the basis for his position that

the alleged leaks entitled Mr. Armstrong to ignore the Postal Service's subpoena.  On July 20,

2011, the government again requested that Mr. Keker expressly invoke any objections to the

subpoena, but he has not responded to that request.  Pugliese Decl. ¶ 10, Exh. C.  To date, Mr.

Armstrong has not produced documents responsive to the subpoena, has not invoked his right

under the "act of production doctrine" not to produce documents pursuant to the Fifth

Amendment, and has not stated any other valid objection to the subpoena.  Pugliese Decl. ¶ 11.

## ARGUMENT

The Inspector General Act of 1978 provides that in the case of noncompliance, an

administrative subpoena "shall be enforceable by order of any appropriate United States district

court." 5 U.S.C. app. 3 § 6(a)(4).  The role of the district court in evaluating a request for

enforcement of an administrative subpoena is "strictly limited."  *FTC v. Texaco, Inc.*, 555 F.2d

862, 872-73 (D.C. Cir. 1977) (en banc).  Courts historically have enforced administrative

subpoenas if: (1) they are for a lawful purpose within the statutory authority of the issuing

agency; (2) they seek information that is reasonably relevant to a matter that the issuing agency is

considering; and (3) they are not unreasonably broad or burdensome.  *See United States v.*

*Powell*, 379 U.S. 48, 57-58 (1964); *United States v. Morton Salt Co.*, 338 U.S. 632, 652-53

(1950).  The District of Columbia Circuit has adopted this standard.  *See FTC v. Invention*

*Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992) ("It is well established that a district

court must enforce a federal agency's subpoena if the information sought is reasonably relevant –

or put differently, not plainly incompetent or irrelevant to any lawful purpose of the agency – and

4

not unduly burdensome to produce.") (citations omitted) (internal quotation marks omitted);

*Texaco*, 555 F.2d at 872 (noting that "the [Supreme] Court ruled that so long as the investigation

was for a lawfully authorized purpose, the documents sought were relevant to the inquiry, and the

demand was reasonable, the Administrator had a right to judicial enforcement of the

subpoenas.")

Moreover, "the scope of issues which may be litigated in an enforcement proceeding must

be narrow, because of the important governmental interest in the expeditious investigation of

possible unlawful activity." *Texaco*, 555 F.2d at 872. Indeed, "the very backbone of an

administrative agency's effectiveness in carrying out [its] congressionally mandated duties ... is

the rapid exercise of the power to investigate." *Id.* (internal quotations marks omitted). To

ensure the summary nature of enforcement proceedings, the government is authorized to rely on

affidavits or declarations to demonstrate that the requirements for enforcement of an

administrative subpoena have been satisfied. *In re EEOC*, 709 F.2d 392, 400 (5th Cir. 1983);

*United States v. Blue Cross & Blue Shield of Michigan*, 726 F. Supp. 1523, at 1524-25 (E.D.

Mich. 1989) (holding that "the OIG subpoena should be enforced or quashed on its face, with

supporting and opposing briefs and affidavits," and that discovery or evidentiary hearings were

unnecessary). In this case, the accompanying Declaration of Special Agent Michael J. Pugliese

demonstrates that summary enforcement of the subpoena issued to Mr. Armstrong is both

appropriate and necessary.

I.      **The Investigation Is Within The Authority Of The United States Postal Service Inspector General**

The investigation by the USPS-OIG regarding fraud or false claims in connection with its sponsorship of the USPS professional cycling team is well within the agency's authority. Administrative agencies in general and their respective Offices of Inspector General in particular have broad investigatory and subpoena power. *See, e.g., Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994) ("Administrative agencies wield broad power to gather information through the issuance of subpoenas."). "Like a grand jury, an agency '*can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.*'" *Id.* (citation omitted) (emphasis added). Pursuant to the Inspector General Act of 1978, the USPS-OIG is authorized – and indeed has the "duty and responsibility" – to conduct investigations, provide reports, and make recommendations regarding, among other things, fraud and abuse in their agencies' programs and operations. 5 U.S.C. app. 3, §§ 4(a)(1)-(3); *id.* § 6(a)(2) (authorizing Inspectors General to conduct investigations relating to an agency's programs and operations that are, "in the judgment of the Inspector General, necessary or desirable.").

The Inspector General Act of 1978 also grants authority to an Inspector General to require by administrative subpoena the production of records "necessary in the performance of the functions assigned by [the] Act." 5 U.S.C. app. 3 § 6(a)(4). It has been observed that "[p]erhaps the Inspector General's most important tool for ferreting out waste, fraud, and abuse is the extensive subpoena power created by Congress to aid his investigations." *United States v. Aero-Mayflower Transit Co.*, 646 F. Supp. 1467, 1472 (D.D.C. 1986), aff'd, 831 F.2d 1142 (D.C.

6

Cir. 1987)." Congress considered this subpoena power "'absolutely essential to the discharge of

the [Inspector General's] functions.'" *Id.* (quoting S. Rep. No. 95-1071 at 32., reprinted in 1978

U.S.C.A.N. 2676, 2709). Moreover, Congress intentionally authorized the Inspectors General to

access the records of recipients of federal funds. *See United States v. Teeven*, 745 F. Supp. 220,

224 n.6 (D. Del. 1990) ("Congress was well aware of the need for the IG to have compelled

access to the records of recipients of federal funds to ensure that fraud and abuse could be

detected."). For these reasons, "[a] constricted interpretation [of the subpoena authority] would

be at odds with the broad powers conferred on the Inspector General by the statute." *United*

*States v. Westinghouse Elec. Corp.* 788 F.2d 164, 170 (3rd Cir. 1986); *see also United States v.*

*Medic House. Inc.*, 736 F. Supp. 1531, 1535 (W.D. Mo. 1989).

In the instant case, the USPS-OIG has undertaken an investigation of fraud or false claims

in connection with the USPS sponsorship of the cycling team. Pugliese Decl. ¶ 3. This

sponsorship arrangement involved the expenditure of significant funds by the USPS. *Id.* Thus, it

is within the authority of the USPS-OIG to investigate in order to detect and prevent fraud and

abuse. *See* 5 U.S.C. app. 3 § 4(a)(1), (3).

## II.   The Information Sought By The Subpoena Is Reasonably Relevant To The Office Of Inspector General Investigation

In the context of enforcement of an administrative subpoena, the courts have interpreted

relevance broadly. "'Reasonably relevant'" means "'merely that the information must be

relevant to *some* (any) inquiry that the [agency] is authorized to undertake.'" *United States v.*

*Hunton & Williams*, 952 F.Supp. 843, 854 (D.D.C. 1997) (citations omitted). So long as the

material requested "'touches a matter under investigation,' an administrative subpoena will

survive a challenge that the material is not relevant." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Board*, 878 F.2d 875, 882 (5th Cir. 1989) (quoting *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) (citations omitted)).  The agency's appraisal of relevancy must be accepted "as long as it is not 'obviously wrong.'" *Hunton & Williams,* 953 F.Supp. at 854 (citations omitted); *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (An "agency's appraisal of relevancy ... 'must be accepted so long as it is not obviously wrong.'") (quoting *Resolution Trust Corp. v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994)).  An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met. *McVane, 44 F.3d at 1136.*

The pending subpoena seeks documents that would allow the OIG to evaluate the matters under investigation, including documents pertaining to Mr. Armstrong's interest in or control of the corporate entities that owned and managed the USPS team (requests 1-2, 6); his understanding and compliance with the sponsorship agreement with the USPS (requests 3-5); funds paid to Mr. Armstrong directly or indirectly by the USPS (requests 1, 6, 10-13); and the use of any banned performance enhancing drugs or procedures by Mr. Armstrong or other members of the cycling team (requests 7-9, 13-21).  Pugliese Decl. ¶ 4.

Thus, the subpoena seeks information related to whether and the extent to which Mr. Armstrong or any other rider on the USPS team used any banned substance or method and whether Mr. Armstrong or any other person affiliated with the USPS team made false statements to the USPS in connection with the sponsorship agreement.  Moreover, the subpoena seeks information about the nature of Mr. Armstrong's interest in the companies that owned and operated the team, which relates to whether Mr. Armstrong may be held vicariously liable for

false claims submitted by those companies.   Requests such as these plainly are relevant to the

issue of whether USPS funds were expended in reliance on false representations about the team's

or Mr. Armstrong's utilization of banned practices and the extent of Mr. Armstrong's liability for

the submission of false claims. *Id.*

## III.   The Subpoena is Not Unreasonably Broad or Burdensome

It is well settled that the burden of showing that the demand is unreasonable falls upon

the subpoenaed party. *See Powell*, 379 U.S. at 58; *Texaco. Inc.*, 555 F.2d at 882; *Hunton &*

*Williams*, 952 F. Supp. at 855.   Where the agency inquiry "is authorized by law and the materials

sought are relevant to the inquiry, that burden is not easily met." *SEC v. Brigadoon Scotch*

*Distrib. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973); *Texaco. Inc.*, 555 F.2d at 882.   Indeed, "[s]ome

burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's

legitimate inquiry and the public interest." *Id.  See also Adams v. FTC*, 296 F.2d 861, 867 (8th

Cir. 1961) ("broadness alone is not sufficient justification to refuse enforcement of a subpoena so

long as the material sought is relevant").

Given the limited scope of the subpoena, Mr. Armstrong cannot resist compliance on the

basis of undue burden.   The requested information is narrowly targeted to aid the USPS-OIG in

completing its investigation in connection with the expenditure of federal funds pursuant to the

sponsorship agreement.   Pugliese Decl. ¶ 4.   The subpoena seeks focused information directly

relevant to this legitimate inquiry – namely, information relating to Mr. Armstrong's

involvement in the ownership or management of the USPS team, the use of banned substances or

methods by team riders, and the making of any false statements in connection therewith.   Thus,

the subpoena is neither overly broad nor unduly burdensome. *Id.*

IV.    **Mr. Armstrong Has Not Stated a Proper Objection to the Subpoena**

To date, Mr. Armstrong has refused to interpose any objection to the USPS-OIG subpoena. Rather, his attorney merely has stated his belief that Mr. Armstrong "is entitled to invoke the Fifth Amendment in response to [the government's] subpoena," while declining to invoke the Fifth Amendment or any other constitutional right. Pugliese Decl. ¶ 6. Mr. Armstrong instead has argued that his concern that his invocation of the Fifth Amendment will be made public entitles him to ignore the USPS-OIG subpoena. The government is not aware of any authority in support of that proposition, and Mr. Keker did not identify any when asked to do so during the parties' July 19, 2011 conference call. To the contrary, the case law articulating the basis for summary enforcement of inspector general subpoenas makes clear that the inquiry is a limited one and that the considerations relevant to summary enforcement do not include the respondent's fear that his objections to the subpoena will be made public.

If Mr. Armstrong believes he is entitled to avoid compliance with the subpoena on constitutional grounds, then it is incumbent upon him to identify the basis for his noncompliance. Unless and until Mr. Armstrong actually invokes his constitutional rights, the government cannot know for certain that he is entitled to do so. He is in a far better position than the Court or the government to know the extent to which the Fifth Amendment applies here, and is in the best position to resolve the uncertainty by simply invoking that right.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter an

Order granting the United States' Petition For Summary Enforcement Of Inspector General

Subpoena and:

1.      Requiring Lance Armstrong to produce to the OIG within five calendar days of

the entry of the Court's Order all items described in the subpoena.

2.      Granting such other and further relief to the United States that this Court deems

necessary and appropriate.

Respectfully submitted,


TONY WEST
Assistant Attorney General

RONALD C. MACHEN JR., D.C. Bar # 447889
United States Attorney

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


DARRELL C. VALDEZ, D.C. Bar # 420232
MERCEDEH MOMENI
Assistant United States Attorney
Judiciary Center Building
555 4th St., N.W., Civil Division
Washington, D.C.  20530
Tel: (202) 307-2843
Fax: (202) 514-8780

11

JOYCE R. BRANDA, D.C.,Bar No. 246363
MICHAEL D. GRANSTON
ROBERT E. CHANDLER, D.C. Bar No. 477640
Attorneys, Department of Justice
Civil Division
Post Office Box 261
Ben Franklin Station
Washington, D.C.  20044
Tel:  (202) 514-4678
Fax:  (202) 514-0280

Attorneys For United States

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,         ) <br>   By:   United States Attorney      ) <br>         for the District of Columbia   ) <br>         555Fourth Street, N.W., Civil Division   ) <br>         Washington, D.C. 20530     ) <br>               ) <br>            Petitioner,     ) <br>               ) <br>           v.         ) <br>               ) <br> LANCE ARMSTRONG        ) <br> Serve: John W. Keker, Esq.      ) <br>        Keker & Van Nest LLP     ) <br>        710 Sansome Street      ) <br>        San Francisco, CA 94111-1704   ) <br>               ) <br>            Respondent.    ) <br> _____) | Misc. No. |

**DECLARATION OF SPECIAL AGENT MICHAEL J. PUGLIESE
IN SUPPORT OF UNITED STATES' PETITION FOR
SUMMARY ENFORCEMENT OF INSPECTOR GENERAL SUBPOENA**

I, Michael J. Pugliese, hereby state and declare:

1.      I am employed as a Special Agent with the U.S. Postal Service (USPS) Office of

Inspector General (OIG).  I have been a Special Agent with the federal government for 11 years,

including the last six years with the USPS-OIG.  My duties include investigations of possible

criminal or civil misconduct by employees and contractors of the USPS.

2.      I am making this declaration in support of the United States' petition for

enforcement of USPS-OIG subpoena *duces tecum* No. 110576 issued pursuant to the Inspector

General Act, 5 U.S.C. app. 3 § 6(a)(4) to Lance E. Armstrong.  The statements made herein are

based upon my personal knowledge, which I acquired in the performance of my duties relating to

the investigation described in ¶ 3 below.

3.    From 1996 through 2004, the USPS sponsored a professional cycling team owned

by Tailwind Sports LLC (Tailwind), and during that time USPS paid Tailwind between

$1 million and $9 million per year to sponsor the team (for a total of approximately $40 million).

Mr. Armstrong was the lead rider for the team from 1999 through 2004.  The sponsorship

agreement between USPS and Tailwind prohibited the team and its riders from employing

substances or methods that were banned by cycling's governing bodies, and further required the

team to take "immediate action" in the event that a rider used such substances or methods in

violation of the agreement.  USPS-OIG is investigating whether certain persons, including Mr.

Armstrong, defrauded or submitted false claims to the USPS by making false statements about

the team's or their own compliance with the sponsorship agreement's prohibition on the use of

banned substances and methods.  The investigation is being conducted substantially in

Washington D.C.  The United States Attorney's Office for the Central District of California is

conducting a separate criminal investigation which is ongoing.

4.    On June 10, 2011, in connection with the aforementioned USPS-OIG

investigation, OIG General Counsel Elizabeth P. Martin issued USPS-OIG administrative

subpoena No. 110576 to Lance E. Armstrong.  The subpoena was issued under the authority of

the Inspector General Act of 1978, 5 U.S.C. app. 3 Section 6(a) (4).  The subpoena seeks

documents relevant to the OIG's investigation, including documents pertaining to Mr.

Armstrong's interest in or control of the corporate entities that owned and managed the USPS

team (requests 1-2 and 6); his understanding and compliance with the sponsorship agreement

with the USPS (requests 3-5); funds paid to Mr. Armstrong directly or indirectly by the USPS

(requests 1, 6 and 10-13); and the use of any banned performance enhancing drugs or procedures

2

by Mr. Armstrong or other members of the cycling team (requests 7-9 and 13-21).  The requests

in the subpoena are narrowly tailored to the needs of the USPS-OIG investigation.  The response

date for the subpoena was June 29, 2011, which government counsel later extended on behalf of

USPS-OIG to July 8, 2011.

   5.   On June 10, 2011, I served Mr. Armstrong via electronic mail to his appointed

counsel, Mr. John W. Keker, with a copy of the subpoena.  Mr. Keker previously had agreed to

accept service on behalf of Mr. Armstrong by electronic mail. A true and correct copy of the

subpoena served on Mr. Armstrong is attached hereto as Exhibit A (except that in the copy, the

page entitled RETURN OF SERVICE is a separate page (it was on the back of the original's first

page) and it has handwritten entries regarding service).

   6.   In a letter dated June 16, 2011, Mr. Armstrong's counsel, John W. Keker,

indicated that Mr. Armstrong "is entitled to invoke the Fifth Amendment in response to [the

government's] subpoena," and inquired about whether the United States would provide "act of

production immunity" in the event that Mr. Armstrong invoked his Fifth Amendment right.

   7.   In its response, the government informed Mr. Keker that any discussions about

any type of immunity should be addressed to the prosecutors leading the criminal investigation in

the Central District of California.

   8.   On July 7, 2011, Mr. Keker informed the government that Mr. Armstrong did not

intend to respond to the subpoena.  He also suggested that, not only would Mr. Armstrong refuse

to produce responsive documents, he also would not  invoke any "of his constitutional rights" or

otherwise state any objection to the subpoena.  Mr. Keker offered no basis for Mr. Armstrong's

failure to respond, but his letter did offer the vague suggestion that there was some connection

3

between Mr. Armstrong's recalcitrance and Mr. Keker's allegation that the investigation in the Central District of California "has been plagued by rampant leaking."

9.      On July, 13, 2011, the Government responded to Mr. Keker's letter of July 7, 2011. In its letter, the Government informed Mr. Keker that Mr. Armstrong's concerns about leaks did not relieve him of the obligation to respond to the USPS-OIG subpoena and asked that Mr. Armstrong reconsider his position in order to avoid the need for enforcement proceedings. Attached hereto as Exhibit B is a true and correct copy of the Government's response letter sent on July 13, 2011 from Mr. Chandler to Mr. Keker.

10.      On July 20, 2011, the government again requested that Mr. Keker expressly invoke any objections to the subpoena, but he did not respond to that request. Attached hereto as Exhibit C is a true and correct copy of a chain of electronic mail messages regarding the Government's request.

11.      As of the date hereof, Mr. Armstrong has not produced any documents responsive to the subpoena, has not invoked any right under the Constitution of the United States not to respond to the subpoena, and has not otherwise stated any objection to the subpoena.

12.      The OIG has fully complied with the Inspector General Act, 5 U.S.C. app. 3 § 6(a)(4).

4

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _13th_ day of _OCTOBER_ , 2011, at _BETHESDA_ ,

_MARYLAND_ .

Michael Pugliese
Special Agent
Office of Inspector General
United States Postal Service

5



**UNITED STATES POSTAL SERVICE**
**OFFICE OF INSPECTOR GENERAL**
MAJOR FRAUD INVESTIGATIONS DIVISION
PO BOX 34493
BETHESDA, MD 20817-0493

Date: June 10, 2011

Lance E. Armstrong
C/O John Keker
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111

Mr. Keker,

Pursuant to the attached federal Subpoena Duces Tecum 110576, the U.S. Postal Service (USPS), Office of Inspector General (OIG), Major Fraud Investigations Division (MFID) hereby grants approval for Lance E. Armstrong to provide subpoena production directly to the U.S. Department of Justice, Civil Division, Washington, DC, instead of the USPS OIG, as required by the subpoena. For your convenience, please provide responsive records to:

Robert E. Chandler, Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch, Fraud Section
601 D. Street, NW
9th Floor
Washington, DC 20004

If you should have any questions concerning this matter, please contact me directly by telephone at (301) 968-0419.

Sincerely,

M.J. Pugliese
Special Agent
Major Fraud Investigations Division
US Postal Service, Office of Inspector General

GOVERNMENT EXHIBIT

*A*



OFFICE OF THE INSPECTOR GENERAL
UNITED STATES POSTAL SERVICE

JUN 1 0 2011

## PRODUCTION OF RECORDS IN RESPONSE TO A SUBPOENA DUCES TECUM ISSUED BY THE U.S. POSTAL SERVICE OFFICE OF INSPECTOR GENERAL

You have been served with an Office of Inspector General (OIG) subpoena duces tecum issued under the Inspector General Act, 5 U.S.C. app. 3 § 6(a)(4). This subpoena is enforceable by order of a federal district court. *Id.* To comply, produce originals. Fully legible and complete copies are acceptable if the originals will be made available to an OIG Special Agent, upon request. The required items must be produced on the date, time, and at the location specified in the subpoena. Deliver or mail the required items to the address indicated in the subpoena. Required items must be received on or before the specified due date. The person who has custody of the records must complete the enclosed certificate attesting that the records produced comply completely with the subpoena and that the records produced are originals or copies of authentic and genuine original records.

If you have any questions about this subpoena, please contact Special Agent Michael Pugliese at (301) 968-0419 or Assistant Special Agent in Charge Samuel Simpkins at (201) 595-4494.


Attachments

**110576**

## UNITED STATES OF AMERICA
UNITED STATES POSTAL SERVICE
OFFICE OF INSPECTOR GENERAL

### SUBPOENA DUCES TECUM

TO:  Lance E. Armstrong

**YOU ARE HEREBY COMMANDED PURSUANT TO THE AUTHORITY OF THE INSPECTOR
GENERAL ACT OF 1978, AS AMENDED (5 U.S.C. app. 3), TO DELIVER TO Special Agent**
Michael Pugliese, an official of the Office of Inspector General, at 10421 Motor City Drive, in the City of
Bethesda, in the State of Maryland, on the 29th of June 2011, at 10:00 a.m., in connection with an official
investigation relating to programs and operations of the United States Postal Service. to wit:

a U.S Postal Service contract.

You are required to bring with you and produce at said time and place all information pertaining to

(see attached sheet incorporated herein as part of this subpoena)

Such information is necessary in the performance of the responsibility of the Inspector General under the
Inspector General Act of 1978, as amended, to conduct and supervise audits, investigations, and other
activities to promote economy, efficiency and effectiveness in the administration of, and to prevent and
detect fraud and abuse in and relating to. the programs and operations of the United States Postal Service.

June  *10*, 2011

                                        U.S. Postal Service
                                        Office of Inspector General


                                        ELIZABETH P. MARTIN
                                        GENERAL COUNSEL

# RETURN OF SERVICE

I hereby certify that a duplicate original of this
subpoena was duly served on the person named herein.

☐ In Person
☐ Via FAX Number _____
☐ By Mail
    ☐ Certified _____
    ☐ Express _____
    ☐ Regular _____
    ☒ Other _By Email to John Kerr at jkerr@kvn.com_

☐ By leaving at principal office or place of
    business on this date:

_June 10, 2011_
_(Month, day, year)_

_M. J. Phillips_
_(Name of person making service)_

_Special Agent_
_(Official title)_

_[signature]_
_(Signature)_

**Attachment**

**Required Documents**
**Subpoena Number: 110576**

TO:  Lance E. Armstrong

A.  Definitions Used in this Subpoena

The following definitions (both in the singular and in the plural) shall apply:

1. The term "you" and "your" shall refer to Lance Armstrong, along with all entities in which Mr. Armstrong is or has been an officer, director, or owner (in whole or in part, but excluding Mr. Armstrong's ownership in companies whose shares are traded on a major national stock exchange) and any other entities over which Mr. Armstrong may exercise control.

2. The term "documents" shall have the same meaning as set forth in Federal Rule of Civil Procedure 34(a)(1)(A) and shall mean and refer to electronically stored information, as that term is defined in the 2006 Advisory Committee Note to Rule 34(a) ("Rule 34(a)(1) is expansive and includes any type of information that is stored electronically"), paper documents, and any other information that is printed, micro-filmed, re-produced by any process, or written or produced by hand.  Paper documents shall include, but not be limited to, correspondence, e-mails, communications, reports, studies, memoranda, directives, policies, agendas, minutes, resolutions, worksheets, graphs, charts, addenda and attachments, written, graphic, and photographic matter, sound recordings, however, produced or reproduced, of every kind and description, including, but not limited to, all copies and drafts thereof that have annotation, notes, modifications or other alterations.

3. "USPS" shall mean and refer to the United States Postal Service.

4. "USPS team" shall mean and refer to the professional cycling team sponsored by USPS from 1996 through 2004.

5. "Government" shall mean and refer to all agencies, divisions, and branches of the United States Government (whether located within or outside of the United States), including, but not limited to, the United States Postal Service.

6. "Tailwind" shall mean and refer to Tailwind Sports LLC, and any and all of its agents, predecessors in interest, successors in interest, parents, and subsidiaries, including but not limited to Tailwind Sports Corporation, Montgomery Sports, Disson Furst & Partners, and DFP Cycling.

7. "CSE" shall mean and refer to Capital Sports and Entertainment LLC, and any and all of its agents, predecessors in interest, successors in interest, parents, and subsidiaries.

8. "UCI" shall mean and refer to Union Cycliste Internationale, and any and all of its agents, predecessors in interest, successors in interest, parents, and subsidiaries.

9. "WADA" shall mean and refer to the World Anti-doping Agency, and any and all of its agents, predecessors in interest, successors in interest, parents, and subsidiaries.

10. "USADA" shall mean and refer to the United States Anti-doping Agency, and any and all of its agents, predecessors in interest, successors in interest, parents, and subsidiaries.

11. "Prohibited substances or methods" shall mean and refer to any substance or practice that appears or has ever appeared on the WADA Prohibited List; violates the World Anti-doping Code or the rules of the UCI, WADA, USADA, the Federation Internationale du Cyclisme Professionel, the United States Cycling Federation, USA Cycling or any other organization that governs the sport of professional cycling; or any substance, the possession, use or sale of which is prohibited by the laws of the United States or any state.

12. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).

13. "Concerning" means relating to, referring to, describing, evidencing, or constituting.

14. "Relevant Time Period" means January 1, 1996 through the present day and continuing into the future.

B. Instructions

This subpoena requests that you produce documents that are maintained as electronically stored information in native electronic format. This subpoena also requests that you produce all electronically stored information in a logically unitized format. Logical unitization of documents requires you to ensure, among other things, that a particular document captures all of its respective pages and that document relationships, such as a "parent" document (e.g., a fax cover sheet) and "children" attachments (e.g., a faxed letter and attachment to the letter), are preserved.

C. Requests

1. Produce all records or communications relating to any interest (financial, voting or other) you hold or have ever held in Tailwind.

2. Produce all records or communications relating to any agreements between you and Tailwind.

3. Produce all records or communications relating to any agreements between Tailwind and USPS.

4. Produce all records relating to communications between Tailwind and USPS.

5. Produce all records or communications relating to rules of conduct or competition applicable to the teams operated by Tailwind.

6. Produce all records or communications relating to any interest (financial, voting or other) you hold or have ever held in CSE and any agreements between you and CSE.

7. Produce all documents relating to meetings or communications with the following persons:

> a. Michele Ferrari;
> b. any employee or agent of WADA or USADA;
> c. any employee or agent of any laboratory or other organization that has conducted tests related to the use of banned substances or methods by athletes;
> d. any employee or agent of USPS;
> e. any person (including any companies or other organizations) that at any time manufactured or distributed any substance believed to have the potential to enhance an athlete's ability to compete in endurance sports.

8. Produce all communications relating to prohibited substances or methods between you and any other person, including any employee or agent of UCI, USA Cycling or any trainer, medical personnel or other person from whom you have received information or advice related to your training or performance as a cyclist.

9. Produce all calendars or similar documents that reflect meetings with (i) UCI, (ii) USA Cycling, or (iii) any trainer or medical personnel or any other person from whom you have received information or advice related to your training or performance as a cyclist.

10. Produce all records of payments made by you to UCI, USA Cycling, WADA or USADA.

11. Produce all records of payments made by you to any employee or agent of the USPS team, including, but not limited to, other team riders.

12. Produce all records of payments made by USPS to you.

13. Produce all records of payments made by you to Michele Ferrari.

14. Produce all of your medical records that reflect your use of any prohibited substances or methods.

15. Produce any records that reflect the purchase of any prohibited substances.

16. Produce all documents related to any analysis of your blood that determined your hematocrit level.

17. Produce all documents related to any analysis of your testosterone levels or testosterone-epitestosterone ratio.

18. Produce all documents related to the use of banned substances or methods by members of the USPS team, and any documents related to allegations that members of the USPS team used prohibited substances or methods.

19. Produce all documents related to your use of banned substances or methods (including but not limited to training journals or other documents that reflect your use or scheduled use of prohibited substances or methods), and any documents related to allegations that you used prohibited substances or methods.

20. Produce all documents related to litigation between you and Mike Anderson.

21. Produce any and all communications preserved through an audio or video recording on which any prohibited substance or method is discussed or the use of any prohibited substance or method by any person is discussed.



OFFICE OF THE INSPECTOR GENERAL
UNITED STATES POSTAL SERVICE

## CERTIFICATE OF COMPLIANCE

I, _____, _____, of _____
                  *Name*                         *Title*

_____, certify that the Company records

provided to _____ are accurate, complete, and in full
        *Name of Special Agent/Inspector*

compliance with the United States Postal Service Office of Inspector General Subpoena Duces

Tecum dated _____.
        *Date*

    If the records are not complete, the records as set forth below have not been produced:

_____

_____

_____

_____

_____

*(USE ATTACHMENT IF NECESSARY)*

    The records described above and/or on the attached sheet will be provided by

_____.
   *Date*

_____
           SIGNATURE OF CUSTODIAN

_____
                DATE

_____
SIGNATURE OF SPECIAL AGENT/INSPECTOR
             *(If available)*



**U.S. Department of Justice**

Civil Division

JRB:MDG:REChandler
DJ 46-16-3005

Tel. (202) 514-4678

*Washington, D.C. 20530*

July 13, 2011

**<u>VIA ELECTRONIC MAIL AND FEDERAL EXPRESS</u>**

John W. Keker, Esq.
Keker & Van Nest LLP
710 Sansome Street
San Francisco, CA 94111-1704

      Re:    <u>Lance E. Armstrong/Subpoena Duces Tecum 110576</u>

Dear Mr. Keker:

      I have received your letter of July 7, 2011. As I understand your position, Mr. Armstrong will not respond to the subpoena issued by the United States Postal Service because you are concerned about assumed leaks by the Civil Division and the District of Columbia United States Attorney's Office, and because you are concerned about the possibility that this office has received information in violation of Rule 6(e). Your concerns lack any basis in fact and, in any event, neither of them relieves Mr. Armstrong of his obligation to respond to a validly issued administrative subpoena.

      We hope that you will reconsider your position and that Mr. Armstrong will respond to the subpoena so that we may avoid the need for enforcement proceedings. You mentioned in your letter that you are interested in meeting with us in order to discuss your concerns, and we would be willing to do that any day next week other than Monday, July 18, in Washington D.C. Our agreement to meet with you next week would be conditioned on the understanding that the


GOVERNMENT
EXHIBIT
B

subpoena deadline is not being extended and that our decision to have the meeting does not operate as a waiver of our ability to assert any appropriate argument in support of a subsequent enforcement action.

Very truly yours,

ROBERT E. CHANDLER
Trial Attorney
Commercial Litigation Branch
Civil Division

cc:     Darrell Valdez, Esq., Assistant United States Attorney (via email)
        Mercedeh Momeni, Esq., Assistant United States Attorney (via email)

-2-

| | |
|---|---|
| **From:** | Chandler, Robert (CIV) |
| **To:** | John Keker |
| **Cc:** | Valdez, Darrell (USADC); Momeni, Mercedeh (USADC) |
| **Subject:** | RE: Lance E. Armstrong/Subpoena Duces Tecum 110576 |
| **Date:** | Thursday, July 21, 2011 9:55:16 AM |

As I explained in my letter to you of June 30, 2011, the Civil Division is not in a position to confer any type of immunity on Mr. Armstrong. If you are seeking act of production immunity, you will need to submit your request directly to the prosecutors in the Central District of California. You have been aware of our position on this issue for three weeks now, and to my knowledge you have not sought act of production immunity from the CDCA prosecutors. If you intend to make such a request now, please inform me of that fact as soon as possible. If you do not intend to make such a request, then we will expect a timely response to our email below.

**From:** John Keker [mailto:JKeker@KVN.com]
**Sent:** Wednesday, July 20, 2011 9:48 PM
**To:** Chandler, Robert (CIV)
**Cc:** Valdez, Darrell (USADC); Momeni, Mercedeh (USADC)
**Subject:** RE: Lance E. Armstrong/Subpoena Duces Tecum 110576

Are you offering act of production immunity--yes or no?

**From:** Chandler, Robert (CIV) [mailto:Robert.Chandler@usdoj.gov]
**Sent:** Wednesday, July 20, 2011 1:23 PM
**To:** John Keker
**Cc:** Valdez, Darrell (USADC); Momeni, Mercedeh (USADC)
**Subject:** Lance E. Armstrong/Subpoena Duces Tecum 110576

John,

Based on our recent correspondence and our conversation yesterday, I believe I understand your position regarding the USPS subpoena, but I want to be sure. Please confirm that Mr. Armstrong will not produce documents responsive to the subpoena, will not invoke his Fifth Amendment right not to produce documents, and will not state any other valid objection to the subpoena. If Mr. Armstrong does intend to invoke the Fifth Amendment, then please send me a letter formally invoking that right as soon as possible.

Best regards,

Robert E. Chandler
United States Department of Justice
Civil Division
Fraud Section
601 D Street NW
Washington, DC 20004
(202)514-4678
robert.chandler@usdoj.gov


GOVERNMENT
EXHIBIT
C