IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Petitioner,<br><br>　v.<br><br>LANCE ARMSTRONG,<br><br>　　　　　　　　　　　Respondent. | Case No.: 1:11-mc-00565 DAR<br><br>**UNDER SEAL**<br><br>Assigned to:　Hon. Deborah A. Robinson<br>Assignment Date:　October 17, 2011<br>Description:　　Miscellaneous |

**FIRST DECLARATION OF JOHN W. KEKER IN SUPPORT OF RESPONDENT
LANCE ARMSTRONG'S OPPOSITION TO PETITION FOR SUMMARY
ENFORCEMENT OF INSPECTOR GENERAL SUBPOENA AND MOTION TO QUASH**

587268.01

I, JOHN W. KEKER, declare and state that:

1. I am an attorney licensed to practice law in the State of California and am a partner of the law firm of Keker & Van Nest LLP, located at 633 Battery Street, San Francisco, California 94111, counsel for respondent Lance Armstrong in the above-captioned action. I am duly admitted to practice law before this Court. Except where expressly stated, I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2. Since the inception of the government's investigations of Mr. Armstrong, someone has been steadily leaking damaging information and accusations regarding Mr. Armstrong to the media. From the nature of the information being leaked, the source appears to be someone closely involved in the government's investigation. Indeed, it appears that the constant stream of leaked information is designed to convict Armstrong in the press and thus drum up public sentiment in favor of the government's ill-conceived case against Armstrong.

3. From the outset of the grand jury investigation being conducted by the United States Attorney's Office in Los Angeles, someone close to the grand jury proceedings has leaked information that properly should be protected by grand jury secrecy. The following partial chronology of grand jury leaks illustrates the extent to which information and evidence harmful to Mr. Armstrong has been disclosed improperly to the media.

4. May 21, 2010. Citing "people with knowledge of the situation [who] did not want their names published for fear of losing their access to sensitive information," the New York Times reports that Mr. Landis, Mr. Armstrong's former teammate who in 2010 admitted to doping after years of denials, is cooperating with federal authorities. *See* Ex. C hereto.

5. May 25, 2010. The New York Times publishes an article stating that "Federal authorities investigating allegations that Lance Armstrong and other top cyclists engaged in doping are considering whether they can expand the investigation beyond traditional drug distribution charges to include ones involving fraud and conspiracy, according to two people briefed on the investigation." *See* Ex. A hereto. The "people briefed on the investigation" told

587268.01

1

the Times reporters what stage the investigation was at, and went on to explain the government's purported theory of "fraud and conspiracy" as it relates to Armstrong. *Id.*

6. <u>July 13, 2010</u>. The same New York Times reporter writes that the grand jury recently issued its first round of subpoenas to individual witnesses. According to the article, the source of the information "spoke on the condition of anonymity because they did not want to be identified discussing a federal investigation." Tellingly, the article states that, "Officials involved in the case said the investigators were especially interested in the people who helped finance the Postal Service squad, which included Armstrong." The article also states that Jeff Novitzky was the lead agent in the investigation, and that Novitzky recently met several times with Landis, but that Landis was unlikely to be called to the grand jury at that time. *See* Ex. D hereto.

7. <u>July 17, 2010</u>. The Wall Street Journal reports that a grand jury document subpoena was issued to former cyclist Greg LeMond. Citing a "person familiar with the matter," the article states that the "prosecutors assigned to the case are seeking documents Mr. LeMond obtained in the discovery phase of [a] recently-settled lawsuit" and goes on to describe the content of some of the documents sought by the subpoena. *See* Ex. F hereto.

8. <u>August 4, 2010</u>. Again citing "two people with knowledge of the investigation" who "spoke on the condition of anonymity because they did not want to jeopardize their access to sensitive information," the same New York Times reporters write that several former teammates of Armstrong's testified in front of the grand jury and allegedly "supported and detailed claims that Armstrong and his former United States Postal Service team participated in systematic doping." *See* Ex. G hereto.

9. <u>August 21, 2010</u>. The New York Times reports on a list of the potential charges being considered by the grand jury. *See* Ex. H hereto.

10. <u>September 16, 2010</u>. Citing "a person briefed on the investigation who spoke on the condition of anonymity," The New York Times reports that a former Armstrong aide, Stephanie McIlvain, is expected to testify before the grand jury the following week. The article

not only identifies Ms. McIlvain as a likely grand jury witness but also describes the areas of inquiry the prosecutors are likely to pursue, including the "focus" of Ms. McIlvain's expected testimony and how that testimony compares to other evidence in the case. *See* Ex. J hereto.

11. <u>September 23, 2010</u>. Again citing "people briefed on the investigation," The New York Times runs an article confirming that Ms. McIlvain testified before the grand jury. *See* Ex. K hereto.

12. <u>September 29, 2010</u>. The New York Times reports that Kevin Livingston, a former rider on Armstrong's team, was subpoenaed to testify before the grand jury. *See* Ex. L hereto.

13. <u>November 2010</u>. Citing "a person briefed on the investigation," the New York Times reports that U.S. investigators, "including federal agent Jeff Novitzky," traveled to France to meet with anti-doping officials and members of Interpol. The next day, The Wall Street Journal reports on the location of the meeting and the specific information U.S. investigators were seeking from the French authorities. Both articles detail the investigative activities of U.S. officials, citing an anonymous "person familiar with the matter." *See* Ex. N hereto.

14. <u>January 2011</u>. Citing a "source familiar with the government's investigation of Armstrong," Sports Illustrated columnist Selena Roberts reports that the Food and Drug Administration ("FDA") developed information showing that, in the late 1990's, Armstrong gained access to a clinical drug developed to treat hemophilia. The story claims that Armstrong was interested in the drug because of its ability to boost the blood's oxygen-carrying capacity. *See* Ex. O hereto.

15. <u>May 10, 2011</u>. The Associated Press reports that U.S. federal agents issued a document request to French officials. Citing people familiar with the investigation "who have seen" the actual document request, the A.P. reports that the "request has been in the works since late last year, shortly after U.S. investigator Jeff Novitzky, prosecutor Doug Miller and other American authorities traveled to Interpol headquarters." The article further states that the document request "targets U.S. Postal and mentions Armstrong by name." *See* Ex. P hereto.

16. <u>May 22, 2011</u>. CBS reporter Scott Pelley reports on "60 Minutes" that George Hincapie, another former teammate of Armstrong's, appeared before the grand jury and testified "that he and Armstrong supplied each other with the blood-booster EPO and discussed having used testosterone – and other banned substances during their preparation for races." Through his attorney, Hincapie releases a statement that he never spoke to "60 Minutes." *See* Ex. Q hereto.

17. <u>June 2, 2011</u>. In response to the "60 Minutes" story, Armstrong's counsel sends a letter to "60 Minutes" pointing out that one of the key factual assertions in the piece – that there was a conspiracy to cover up Armstrong's allegedly positive test for erythropoietin (EPO) during the 2001 Swiss tour – had recently been disproven through an interview given by the Swiss lab director in charge of the testing, Dr. Martial Saugy, who categorically denied that Armstrong had ever tested positive at the Tour of Switzerland. Within hours of the publication of the letter, the purported substance of Dr. Saugy's private interview with federal authorities in September of 2010 is leaked to an AP reporter who covers the federal courthouse in Los Angeles. *See* Ex. T hereto.

18. <u>June 14, 2011</u>. The New York Times reports on an alleged confrontation between Armstrong and Tyler Hamilton in Aspen, Colorado. The article mentions the service of a grand jury subpoena for certain videotapes and states that, according to a "person briefed on the matter" who "spoke on condition of anonymity because he did not want to jeopardize his access to delicate information," "federal authorities are looking into whether the encounter between Hamilton and Armstrong … constitutes witness tampering." *See* Ex. U hereto.

19. The foregoing list of secret grand jury information leaked to the media is not exhaustive. Numerous other articles have discussed other aspects of the investigation, including the timing for a potential indictment, *see* Ex. V hereto, the strategies employed by U.S. investigators, *see* Ex. W hereto, and the identities of other individuals who have provided evidence to the grand jury, *see id.*

20. Attached hereto as Exhibit A is a true and correct copy of an article titled "Cycling Doping Inquiry May Broaden" published in *The New York Times* on May 25, 2010.

21. Attached hereto as Exhibit B is a true and correct copy of an article titled "A Disgraced Rider's Admissions, and Accusations" published in *The New York Times* on May 20, 2010.

22. Attached hereto as Exhibit C is a true and correct copy of an article titled "After Doping Allegations, a Race for Details" published in *The New York Times* on May 21, 2010.

23. Attached hereto as Exhibit D is a true and correct copy of an article titled "Armstrong Investigation Heating Up" published in *The New York Times* on July 13, 2010.

24. Attached hereto as Exhibit E is a true and correct copy of an article titled "U.S. Casts Wider Net in Probe of Cycling" published in *The Wall Street Journal* on July 10, 2010.

25. Attached hereto as Exhibit F is a true and correct copy of an article titled "Cycling Investigators Subpoena LeMond" published in *The Wall Street Journal* on July 17, 2010.

26. Attached hereto as Exhibit G is a true and correct copy of an article titled "Cyclists Said to Back Claims That Armstrong Doped" published in *The New York Times* on August 4, 2010.

27. Attached hereto as Exhibit H is a true and correct copy of an article titled "A Champion Against Cancer, Now Under Siege" published in *The New York Times* on August 21, 2010.

28. Attached hereto as Exhibit I is a true and correct copy of an article titled "Landis Said to File Suit Against Cycling Team" published in *The New York Times* on September 3, 2010.

29. Attached hereto as Exhibit J is a true and correct copy of an article titled "Recording May Play Role in Armstrong Inquiry" published in *The New York Times* on September 16, 2010.

30. Attached hereto as Exhibit K is a true and correct copy of an article titled "Cycling; Armstrong Associate Testifies" published in *The New York Times* on September 23, 2010.

31. Attached hereto as Exhibit L is a true and correct copy of an article titled

"Pressure Raised as Armstrong Allies Are Called to Testify" published in *The New York Times* on September 29, 2010.

32. Attached hereto as Exhibit M is a true and correct copy of an article titled "Lance Armstrong Doping Inquiry Intensifies" published in *The New York Times* on November 16, 2010.

33. Attached hereto as Exhibit N is a true and correct copy of an article titled "U.S. Cycling Investigation Shifts Its Focus to Europe" published in *The Wall Street Journal* on November 17, 2010.

34. Attached hereto as Exhibit O is a true and correct copy of an article titled " The Case Against Lance Armstrong" published in *Sports Illustrated* on January 24, 2011.

35. Attached hereto as Exhibit P is a true and correct copy of an article titled :Feds ask for help with Armstrong case" published with *The Associated Press* on May 10, 2011.

36. Attached hereto as Exhibit Q is a true and correct copy of an article titled "Ex-teammate: I saw Lance Armstrong inject EPO" reported with Scott Pelley on *60 Minutes* on May 22, 2011.

37. Attached hereto as Exhibit R is a true and correct copy of an article titled "Ex-teammate Hincapie reportedly tells feds Armstrong used PEDs" published in *USA Today* on May 20, 2011.

38. Attached hereto as Exhibit S is a true and correct copy of a letter from John Keker and Elliot Peters sent to Jeffrey Fager of *60 Minutes,* dated May 31, 2011.

39. Attached hereto as Exhibit T is a true and correct copy of an article titled "Lab chief told feds of suspicious Armstrong test" published with *The Associated Press* on June 2, 2011.

40. Attached hereto as Exhibit U is a true and correct copy of an article titled "Armstrong Encounter Draws Scrutiny by F.B.I." published in *The New York Times* on June 14, 2011.

41. Attached hereto as Exhibit V is a true and correct copy of articles titled

"Armstrong doping probe nearing end" (*The Associated Press,* Nov. 20, 2010); "Lance Armstrong Doping Trial Ruling Looms" (*Sky News HD,* Jan. 26, 2011); "No decision soon in long-time Armstrong probe" (*USA Today,* Feb. 12, 2011); "Pressure Raised as Armstrong Allies Are Called to Testify"(*The New York Times,* Sept. 29, 2010); and "Questions remain for Lance Armstrong as cycling comeback winds down" (*ESPN.com,* Jan. 24, 2011).

42. Attached hereto as Exhibit W is a true and correct copy of articles titled "Armstrong Distanced Himself From Doping Inquiry" (*New York Times,* July 14, 2010); "Probe Looks Under Rock" (*Dailey News,* Aug. 1, 2010); "Federal authorities get telephone recording linked to Lance Armstrong case" (*Los Angeles Times,* Sept. 15, 2010); and "Blood Brothers" *(Wall Street Journal,* July 2, 2010).

43. Attached hereto as Exhibit X is a true and correct copy of an article titled "Sources tell SI Alex Rodriguez tested positive for steroids in 2003" published in *Sports Illustrated* on February 7, 2009.

44. Attached hereto as Exhibit Y is a true and correct copy of an article titled "Sosa Is Said to Have Tested Positive in 2003" published in *The New York Times* on June 17, 2009.

45. Attached hereto as Exhibit Z is a true and correct copy of an article titled "Ortiz and Ramirez Said to Be on '03 Doping List" published in *The New York Times* in July of 2009.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 27, 2011, at San Francisco, California.

JOHN W. KEKER

587268.01

7